# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**ROSIE M. COLLIER**                                                                              **PLAINTIFF**


**v.**                              **CASE NO. 4:05-CV-01624 GTE**


**CITY OF LITTLE ROCK, ARKANSAS;**
**BARBARA HYATT, employee; DON FLEGAL,**
**Director Human Resources Department;**
**ANDRE BERNARD, Director of Housing and**
**Neighborhood**                                                                              **DEFENDANTS**


## <u>ORDER</u>

Presently before the Court is Defendants' Motion for Summary Judgment.  On October 18, 2007, the Court directed Plaintiff to show cause by filing with the Court a statement setting forth any and all facts and circumstances which support her position that summary judgment should not be entered in Defendants' favor because Plaintiff had failed to file a response to Defendants' motion.  On October 24, 2007, the deadline given by the Court, Plaintiff filed her response.  However, Plaintiff failed to comply with the Court's instructions in its Scheduling Order regarding the format of summary judgment responses and Local Rule 56.1(b).  Pursuant to Local Rule 56.1(c), "[a]ll material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Because Plaintiff failed to controvert the statements filed by Defendants, those facts are deemed admitted.

## I.      Background

Defendants submit the following facts through the submitted affidavits and supporting documentation:  On November 11, 1993, Plaintiff was hired by the City of Little Rock as an Alert Center Facilitator within the City's Housing and Neighborhood Programs Department.  She held that position until February 28, 1997, when she resigned.  Plaintiff was re-hired as an Alert Center Facilitator on June 15, 1998.  In August 2004, Plaintiff was assigned to the Park Street Alert Center.  At that time, Plaintiff's immediate supervisor was Willie Carpenter, Alert Center Operations Supervisor.  Ms. Carpenter's immediate supervisor was Defendant Barbara Hyatt, Manager of the Neighborhood Programs Division, and Ms. Hyatt's immediate supervisor was Defendant André Bernard, who was the Director of the Housing and Neighborhood Programs Department.  Defendant Don Flegal was the Director of the City's Human Resources Department.

On August 6, 2004, Ms. Hyatt went to the Park Street Alert Center with Tracy Roark, the Code Enforcement Supervisor, to pick up a CPU, which was assigned to Code Enforcement and was to be configured for a newly hired Code Enforcement Officer.  On August 9, 2004, Marvin Benton, the Environmental Services Coordinator for the Housing and Neighborhood Programs Department, was supervising a crew of community service workers assigned to clean an alley in the area of the Park Street Alert Center.  That day, Ms. Hyatt could not reach Plaintiff at the Alert Center, so she called Plaintiff's City issued cell phone.  Plaintiff indicated she was standing in front of the Alert Center talking to a citizen and complained that she had never received an answer from City staff regarding the use of certain equipment to clean up the alley.  Ms. Hyatt informed Plaintiff that she was assigning the City truck that was at the Alert Center to Mr.

Benton for that day, and that she would need to return the truck.  She also asked Plaintiff if her child was at the Alert Center, and Plaintiff indicated that she was.

Later in the morning on August 9, 2004, Plaintiff was at the Alert Center with a small child and a teenage summer worker when Mr. Benton arrived at the Alert Center.  Plaintiff stated that she was angry and upset about the way things were being done.  The child brought Plaintiff a cell phone, which Plaintiff threw in the trash can.  Plaintiff indicated that she was upset that Ms. Hyatt instructed Plaintiff to give Mr. Benton the City truck, and Plaintiff asked Mr. Benton to sign a release for the truck.  Mr. Benton refused to sign the release because he had already been instructed to take the vehicle and signing a release was not required by City or Department policy.  Plaintiff was upset and angry that Mr. Benton refused to sign and made the statement that this was the worst department and the worst people to work for in the City.  Plaintiff was angry and agitated and her tone of voice was rude, loud and unprofessional.  The incident was in the presence of the teenager and the small child.   Mr. Benton reported to Ms. Hyatt and Ms. Carpenter that there had been an incident at the Alert Center involving Plaintiff.

Ms. Hyatt instructed Ms. Carpenter to have Plaintiff come to Ms. Hyatt's office at City Hall to discuss the matter.  While Ms. Hyatt was speaking with Ms. Carpenter, Plaintiff came into Ms. Carpenter's office and informed Ms. Hyatt that she was going home.  Ms. Hyatt informed Plaintiff that she could not go home at that time, but that she needed to sit down and calm down and discuss what had occurred with Mr. Benton at the Alert Center.  Plaintiff refused to sit down, was very angry, pointed her finger at Ms. Hyatt, was belligerent and out of control.  Plaintiff accused Ms. Hyatt and Mr. Roark of taking her computer and stated that they should have signed a release for the computer because she was responsible for the Alert Center

3

equipment.  Ms. Hyatt informed Plaintiff that Mr. Roark and Ms. Carpenter were responsible for

the Alert Center equipment, and it was not necessary to sign a release.

Plaintiff also made a statement that Ms. Hyatt had no right to call her child "your child",

and that her child had a name.  Plaintiff twice made the statement that she quit, and Ms. Hyatt

told Plaintiff that she would need to put that in writing.  Plaintiff began to walk off, and Ms.

Hyatt told her that if she left it would be unauthorized leave without pay and that she was out of

control and being insubordinate.  Plaintiff indicated that she was going to speak with Mr.

Bernard.  Mr. Bernard met with Plaintiff, Ms. Hyatt, and Ms. Carpenter, and Plaintiff stated that

she could not and would not continue to work for Ms. Hyatt.  Plaintiff also stated that Ms. Hyatt

talked to her like a dog and she would not put up with that.  She continued to act belligerently

and she was angry and out of control.  After Plaintiff left, Mr. Bernard, Ms. Carpenter, and Ms.

Hyatt decided to suspend Plaintiff for five days for insubordination and multi-verbal outburst and

refer her to the Employee Assistance Program ("EAP").

On August 11, 2004, Plaintiff was directed to meet with Ms. Carpenter and Ms. Hyatt at

City Hall on August 12, 2004 at 8:00 a.m.  Plaintiff arrived at the meeting with Ms. Carpenter

and Ms. Hyatt at 8:22 a.m. on August 12, 2004.  Plaintiff was informed that the decision was

made to suspend her for five days for insubordination and multi-verbal outburst and to make a

mandatory referral to EAP.  After reading the Disciplinary Action Form and Confidential

Employee Assistance Program Mandated Referral to Plaintiff, Ms. Hyatt directed Plaintiff not to

attend any of her scheduled meetings or enter the Alert Center during her suspension.  Ms. Hyatt

also directed Plaintiff to turn in her keys to the Alert Center and her City cell phone.  Plaintiff got

her cell phone out and began deleting numbers.  Ms. Hyatt directed Plaintiff to turn in her City

4

employee identification, as well as any City vehicle keys in her possession.  Plaintiff turned her

back to Ms. Hyatt and directed her comments to Ms. Carpenter.

Ms. Hyatt handed the forms to Plaintiff and told her she could sign or refuse.  Plaintiff got

up and walked toward the door.  Ms. Hyatt informed Plaintiff that her actions at that moment

were the exact reason they were there in the first place.  Plaintiff stated to Ms. Hyatt, "I'm not the

one who needs help, you're the one who needs help and you have needed it for a very long time."

Plaintiff left the room and said she would be in front and would take her copy there.  Plaintiff

made a comment to Ms. Carpenter that Ms. Carpenter was a "kiss ass Uncle Tom."

That same day, Ms. Carpenter, Ms. Hyatt, and Mr. Bernard decided that Plaintiff's

employment with the City should be terminated due to Plaintiff's insubordination.  However,

pursuant to the City's Policy and Procedures Manual, an employee must receive a pre-

termination hearing prior to being terminated.  On August 13, 2004, Plaintiff submitted an appeal

request regarding her suspension.  Mr. Bernard instructed Ms. Hyatt not to serve the Notice of

Pre-Termination Hearing until Plaintiff's appeal of her suspension was resolved.  Plaintiff was

involved in a motor vehicle accident on September 20, 2004 during working hours, and because

of this, Mr. Bernard instructed Ms. Hyatt to hold off on service the Notice of Pre-Termination

Hearing.  Plaintiff's suspension was upheld on September 23, 2004.

On October 13, 2004, Ms. Hyatt and Ms. Carpenter went to the Park Street Alert Center

to serve Plaintiff with the Notice of Pre-Termination Hearing, which was based on Plaintiff's

insubordination on August 12, 2004.  Plaintiff and Little Rock Police Officer Michelle Hill were

outside of the Alert Center.  Plaintiff advised that she was going to seek medical treatment.

Plaintiff never indicated that she was suffering from heart attack symptoms.  Ms. Hyatt asked

Plaintiff to come into the Alert Center for a moment and asked Officer Hill to wait outside in order to preserve Plaintiff's privacy.  Ms. Hyatt began to read the Notice of Pre-Termination Hearing to Plaintiff.  When Plaintiff asked why she was being considered for termination, Ms. Hyatt stated that her insubordination, actions and remarks on the day she was served with the suspension notice were the reason.  Ms. Hyatt advised Plaintiff to remove any personal items, and while Plaintiff sat at her desk, she began singing that Satan was in the house and Jesus would protect her from this evil.  Plaintiff came toward Ms. Hyatt with her hands in a fist and shook her fists at Ms. Hyatt and shoved Ms. Hyatt with her chest three times.  Plaintiff told Ms. Hyatt that Jesus knew Ms. Hyatt was evil, that Ms. Hyatt needed help and had needed help for a long time.

After speaking with Mr. Bernard and based upon these actions, Ms. Hyatt amended the Notice of Pre-Termination Hearing to include the events of October 13, 2004.  Mr. Bernard advised that Ms. Hyatt contact the Little Rock Police Department to give an oral statement, which she did.  The second Pre-Termination Hearing Notice was prepared and mailed to Plaintiff on October 15, 2004.  The pre-termination hearing was conducted on December 2, 2004, after Plaintiff was released to return to work by her physician.  On December 2, 2004, Plaintiff was terminated.  She appealed the termination.  The appeal hearing was conducted on December 22, 2004, and Plaintiff's termination was upheld on December 29, 2004.

Plaintiff also filed a Charge of Discrimination with the EEOC on December 2, 2004, alleging that she was discriminated against on the basis of race, retaliation, age, sex and disability.  The EEOC issued its notice of right to sue on July 29, 2005, and Plaintiff filed her Complaint in this action on October 25, 2005.  In her Complaint, Plaintiff alleges five counts: (1) Assault; (2) Criminal Slander; (3) Harassment under Title VII of the Civil Rights Act of 1964

6

and the Americans with Disabilities Act ("ADA"); (4) Tort of Wrongful Discharge and

Retaliated (sic); and (5) Theft by Deception.  Plaintiff's Complaint also refers to discrimination,

hostile work environment, disparate treatment, religion, ADEA, equal protection and due

process.  However, these claims are not addressed in the specific counts set forth by the Plaintiff.

## II.    Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, so that the

dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in

determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial-- whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary

judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> i.e., '[to] point[] out to the District Court,'that the record does not disclose a
> genuine dispute on a material fact.  It is enough for the movant to bring up the fact
> that the record does not contain such an issue and to identify that part of the
> record which bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute exists on any
> material fact, it is then the respondent's burden to set forth affirmative evidence,
> specific facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be granted.

7

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

## III.     Motion for Summary Judgment

### A.     Assault and Slander

Defendants argue that Plaintiff's Complaint was filed outside the one-year statute of limitations for assault and slander.  *See* Ark Code Ann. § 16-56-104(2)(A) and (3).  Plaintiff alleges in her Complaint that the facts relating to these claims occurred on October 13, 2004.  Plaintiff filed her Complaint on October 25, 2005.  Plaintiff has failed to address this argument in

her response.  Therefore, Plaintiff's assault and slander claims are barred and summary judgment should be granted.

### B.        Harassment under Title VII and the ADA

Defendants correctly assert that co-workers, including supervisors, cannot be held personally liable under Title VII.  *Schoffstall v. Henderson,* 223 F.3d 818, 821 n.2 (8th Cir. 2000).  The same rationale would also apply to claims under the ADA, as the language in the ADA defining "employer" is very similar to the language in Title VII.  *See* 42 U.S.C. §§ 2000e (b), 12111(5)(A).  Plaintiff fails to directly dispute this assertion.  Rather, Defendant simply states that Defendant Barbara Hyatt "did place the Plaintiff Rosie M. Collier in [a] hostile working environment."  While the Court must view the facts in a light most favorable to Plaintiff, "mere allegations which are not supported with specific facts are not enough to withstand [a] motion" for summary judgment.  *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir. 1999).  Therefore, summary judgment should be granted as to Plaintiff's Title VII and ADA claims against Ms. Hyatt.

Defendants also assert that even if Plaintiff had brought this count against the City of Little Rock, Plaintiff cannot establish a prima facie case of harassment.  To establish a prima facie case of hostile work environment claim, Plaintiff must prove that: "(1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; and (4) the harassment affected a term, condition, or privilege of her employment."  *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720 (8 th Cir. 2003).  "Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an objectively

hostile or abusive work environment.'" *Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1006 n.9 (8th Cir. 2000).   "Relevant factors for determining whether conduct rises to this level include its frequency; severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Defendants argues that she alleges that she was harassed on October 13, 2004, when Ms. Hyatt and Ms. Carpenter served her with the Pre-Termination Hearing Notice.  The decision to terminate Plaintiff was made in August 2004, but was delayed due to Plaintiff's pending appeal of her suspension and Plaintiff's involvement in a motor vehicle accident.  Defendant states that there is no indication that the delivery of the Pre-Termination Hearing Notice was because of Plaintiff's race, color religion, sex, national origin, or disability.  Additionally, Defendant states that Plaintiff cannot demonstrate that any action taken by Defendants was "sufficiently severe or pervasive to alter the conditions" of Plaintiff's employment and "create an objectively hostile or abusive work environment."  Plaintiff has failed to dispute this argument.  The Court agrees that summary judgment should be granted.

### C.    Wrongful Discharge and Retaliation

Once again, although the Complaint appears to allege wrongful discharge and retaliation against the individual Defendants, they cannot be held personally liable under Title VII.  To the extent that the Complaint could be read to assert this count against the City of Little Rock, Defendants argue that Plaintiff cannot make out a prima facie case of retaliation.  To establish a prima facie case of retaliation, Plaintiff has the burden to show that she engaged in protected activity, that Defendants took adverse action against her, and that there was a causal connection

between those two actions. *Henthorn v. Capitol Communications, Inc*., 359 F.3d 1021, 1028 (8th Cir. 2004).

Defendants assert that Plaintiff argues that she was retaliated against because of the three grievances regarding the application of the City's Policy and Procedures Manual that she filed, but in those grievances, Plaintiff never attributes her complaints to discriminatory conduct on the basis of race, sex, disability, or any other protected characteristic.  Defendants cite *Hunt v. Nebraska Public Power Dist*., 282 F.3d 1021, 1028 (8th Cir. 2002), for the proposition that a plaintiff must attribute her workplace complaints to a protected characteristic in order for a court to find that said plaintiff has engaged in protected activity for purposes of Title VII.

Additionally, Defendants assert that Plaintiff cannot establish that there is a causal connection between her complaints and her termination.  The decision to fire Plaintiff was made on August 12, 2004.  Plaintiff's first grievance was filed after the decision was made, on August 20, 2004.  Plaintiff's response fails to adequately dispute these arguments.  Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

### D.      Theft by Deception

Plaintiff's theft by deception claim appears to be based upon her compensation while she was employed as an Alert Center Facilitator for the City of Little Rock.  In Mr. Bernard's Affidavit, he states that a salary equity study was conducted in 2003, but that no salaries were adjusted at that time.  Mr. Bernard further states that based on the results of the 2005 study, Plaintiff was issued payment on July 18, 2005, for salary increases she should have received in 2003 and 2004, together with estimated interest.  Defendants argue that the facts demonstrate that an inequity was discovered in Plaintiff's salary, and Plaintiff was paid for that inequity.

11

However, Defendants state that theft by deception is simply not a recognized civil cause of action under either federal or Arkansas law.  Plaintiff has not addressed this count in her response.  The Court agrees with Defendants' assertions.  Even if a such a cause of action existed, Plaintiff was paid for the inequities discovered in her salary, and therefore, Defendants are entitled to summary judgment.

### E.    Other Issues

To the extent that Plaintiff's Complaint alleges claims of discrimination, hostile work environment, disparate treatment, religious discrimination, age discrimination, equal protection, and due process violations, summary judgment should be granted.  Plaintiff's failure to establish the essential elements of discrimination and hostile work environment are addressed above.

Furthermore, Plaintiff's Complaint fails to allege any facts that would support a claim of disparate treatment, religious discrimination, or age discrimination.  Also, as to Plaintiff's age discrimination and equal protection claims, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination under the *McDonnell Douglas* burden-shifting framework.  Plaintiff has failed to assert any facts to dispute Defendants arguments.  Once again, while the Court must view the facts in a light most favorable to Plaintiff, "mere allegations which are not supported with specific facts are not enough to withstand [a] motion" for summary judgment.  *Klein,* 198 F.3d at 709.  The record demonstrates that Plaintiff was terminated due to her insubordination, and Plaintiff has not established that the asserted reason was pretextual.  Finally, Plaintiff was afforded due process by the pre- and post-termination procedures afforded to her.  Therefore, summary judgment is appropriate as to these claims.

Accordingly,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (Docket No. 97) be, and it is hereby GRANTED.

IT IS SO ORDERED this 25th day of October, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE